592 P.2d 1258

Edward A. JACKSON, deceased, Carmen C. Jackson, widow, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Galyen Enterprises, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 14019–PR.

Supreme Court of Arizona, In Banc.

March 23, 1979.

Nebeker, Hunt, Stanley & Hossler, Ltd. by David J. Hossler, Yuma, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Don A. Fendon, Phoenix, for respondents employer and carrier.

CAMERON, Chief Justice.

This Industrial Commission matter comes to us on a petition for review from the opinion and decision of the Court of Appeals, Division One, *Jackson v. Industrial Commission*, 122 Ariz. 4, 592 P.2d 1270, 1 CA–IC 1773, which set aside an award of the Industrial Commission. We have jurisdiction pursuant to Rule 23, Rules of Civil Procedure, 16 A.R.S.

We must answer only one question on appeal and that is: Does the Industrial Commission have the jurisdiction to entertain a collateral attack on a judgment of the Superior Court?

The facts necessary for a resolution of this dispute are as follows. Carmen G. Jackson is the widow of Edward A. Jackson, who was killed in a job-related industrial accident in 1970 while employed by Galyen Enterprises. She petitioned for and received widow's benefits pursuant to statute in the amount of $366 per month plus additional benefits for her children. On 11 March 1975, she married one Raymond T. Haugh and received a lump sum settlement of her death benefits under § 23–1046(A)(2). At the time of the second marriage, Carmen was 42 years old and Raymond T. Haugh was 24 years old.

Almost eight months later, on 8 October 1975, Carmen petitioned for an annulment of that marriage in the Superior Court of Yuma County. She alleged in the petition that Haugh had made false and fraudulent protestations of love and affection solely for the purpose of obtaining the money she would receive from the lump sum settlement of her death benefits. Haugh was served with a copy of the petition but made no appearance. The Superior Court granted her petition for annulment and entered its decree in February 1976. Carmen then applied to the Commission for reinstatement of her monthly benefits under the original award and at the same time tendered back the amount of her lump sum

settlement. Her petition for reinstatement was denied by the hearing officer who held that false statements of love and affection were not such an "impediment" to marriage as to render it void within the meaning of our annulment statute, A.R.S. § 25–301, and that therefore the Superior Court was without jurisdiction to grant the annulment. The hearing officer found:

"5. That applicant's Decree of Annulment was granted upon allegations that Raymond Haugh fraudulently induced her to marry him because he loved her and wanted her as his wife when in truth and in fact he did not love her and wanted to marry her solely for the purpose of obtaining the lump sum benefits she would receive from the State Compensation Fund upon her remarriage.

"6. That false statements of love and affection for another person does not constitute an impediment rendering the marriage herein void; therefore, the Superior Court was without jurisdiction to enter the annulment decree and therefore the widow's/applicant's Petition for Reinstatement for Death Benefits should be denied. * * * "

Carmen sought review in the Court of Appeals which held that the Commission erred in holding the "annulment was based upon improper grounds" and set the award aside. The Court of Appeals also considered prior decisions of this court which had held that the Commission had the power to ignore a decree of annulment of a Superior Court. The Court of Appeals stated:

"Petitioner first argues that the carrier should not have been permitted collaterally to attack the annulment decree entered by the superior court. Generally collateral attacks on court judgments are maintained in courts, and not in administrative agencies, and a final judgment cannot be attacked on the ground that it was based on a mistake of law. (citations omitted) An outsider might well be surprised by the Industrial Commission's consideration of the carrier's collateral attack on the annulment judgment, particularly since there was no question con-

cerning the superior court's jurisdiction over subject matter and the parties. *See generally* 13, Wright, Miller, & Cooper, Federal Practice and Procedure § 3536 (1975). We are aware of no other areas of the law in which Arizona courts have permitted an administrative agency to treat a superior court judgment as a nullity.

" * * * Although we find the practice extremely disquieting, any reexamination must be done by the Supreme Court, and not by this Court. *McKay v. Industrial Comm'n*, 103 Ariz. 191, 438 P.2d 757 (1968). (footnote omitted)." *Jackson v. Industrial Commission*, 122 Ariz. 4, 592 P.2d 1270 (App.1978).

The carrier and the employer petitioned this court for review.

■ There is no question in this jurisdiction that a widow whose workmen's compensation payments have been terminated and converted to a lump sum settlement after a second marriage, may have those payments reinstated upon annulment of the second marriage and tender of the lump sum settlement. *Means v. Industrial Commission*, 110 Ariz. 72, 515 P.2d 29 (1973). The question we consider at this time is whether the Commission may ignore a decree of annulment by a court of competent jurisdiction and refuse to reinstate the award. In order to reach a decision in this matter, it is necessary to review the previous law in this state.

■ The leading Arizona case is *Southern Pacific Company v. Industrial Commission*, 54 Ariz. 1, 91 P.2d 700 (1939). In *Southern Pacific*, a widow had received an award of monthly benefits after her husband had died as a result of employment-related injuries. She later remarried and soon thereafter applied for and received from the Commission a lump sum settlement of the benefits as provided by statute. The widow subsequently obtained an annulment of her second marriage on the grounds that her husband was impotent. The widow then reapplied to the Industrial Commission for reinstatement of her

monthly benefits tendering back the amount of her lump sum settlement. The court stated the general rule in Arizona that a legal annulment after a second marriage will allow the widow reinstatement of her industrial benefits upon tender of the amount of the lump sum settlement. The employer in *Southern Pacific,* however, had contended that the widow's second marriage was not subject to annulment. We stated:

"This brings us to the question which was most strenuously urged by petitioner at the hearing. It contended, and still contends, that the marriage was not, under our law, subject to annulment for the cause set forth in the complaint, and that the trial court, therefore, had no jurisdiction of the matter. If this be true, then the judgment is void on its face and subject to collateral attack, and if there be no legal annulment nor a possibility thereof, the marriage is still subsisting and the lump sum settlement must necessarily stand." 54 Ariz. at 7–8, 91 P.2d at 703.

After an analysis of the statutory changes made by the legislature, the court held that impotency was not proper grounds for annulment. The court stated:

"Such being the case, the cause upon which the beneficiary herein secured an annulment of her marriage was not one authorized by law, and the court, of course, had no jurisdiction to render such a judgment. It necessarily follows that the beneficiary is still the wife of [her second husband]. * * *" 54 Ariz. at 13, 91 P.2d at 705.

Other Arizona cases have followed this line of reasoning. See, for example, *Hallford v. Industrial Commission,* 63 Ariz. 40, 159 P.2d 305 (1945); *United States Fidelity and Guaranty Co. v. Industrial Commission,* 25 Ariz.App. 244, 542 P.2d 825 (1975); *State Compensation Fund v. Foughty,* 13 Ariz. App. 381, 476 P.2d 902 (1970).

The first erosion of *Southern Pacific* occurred in the case of *Means v. Industrial Commission,* supra, wherein we stated that "courts under general equity powers have inherent jurisdiction to entertain and adjudicate actions for annulment of marriage, irrespective of statute." 110 Ariz. at 74, 515 P.2d at 31. We then overruled a portion of the opinion in *Southern Pacific,* supra, which held that impotency being a grounds for divorce, was not grounds for annulment. We did not question, however, the collateral attack in the *Industrial Commission* proceedings on the annulment decree.

It is now apparent that by allowing the Commission to ignore a decision of a court of competent jurisdiction we have created an avenue for abuse and injustice to those people the statute was enacted to protect. In the instant case, the hearing officer misconstrued the facts as alleged in the petition and incorrectly found the Superior Court did not have jurisdiction to grant the annulment. He then refused to reinstate the widow's benefits. The hearing officer, in effect, became an appellate judge reviewing a decision of the Superior Court.

As the Court of Appeals indicated in their opinion in this case, the rule set forth in *Southern Pacific,* supra, is an oddity in our law and has been applied only to *Industrial Commission* cases. Upon reexamination, we believe that a Superior Court's judgment and jurisdiction to act should not be subject to collateral attack by the *Industrial Commission.* This does not, of course, prevent the *Industrial Commission* from applying the doctrine of estoppel as discussed by our Court of Appeals in *State Compensation Fund v. Reed,* 12 Ariz.App. 317, 470 P.2d 465 (1970). The Commission may not, however, ignore a judgment of the Superior Court. We do not at this time reach the issue of the standing of the carrier, Commission, or other proper party to directly attack the judgment in the Superior Court. The Superior Court judgment, however, may not be collaterally attacked in the Commission's proceedings.

So much of *Southern Pacific v. Industrial Commission,* 54 Ariz. 1, 91 P.2d 700 (1939) and cases following, which held that a judgment of the Superior Court may be collaterally attacked in an Industrial Commission proceeding, are overruled.

That portion of the opinion of the Court of Appeals which followed the prior opinions of this court in *Southern Pacific,* supra, and following cases, regarding the power to collaterally attack judgments of the Superior Court, is vacated. The award is set aside.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.